UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRIYA TAHILIANI and KIM TSAI<br><br>              Plaintiffs,<br><br>v.<br><br>CITY OF EVERETT, MAYOR CARLO DEMARIA, CITY OF EVERETT SCHOOL COMMITTEE, WILLIAM HART, JEANNE CRISTIANO and MICHAEL MANGAN,<br><br>              Defendants. | Civil Action No.: 1:24-CV-10544-WGY |

**OPPOSITION TO DEFENDANTS' CITY OF EVERETT AND MAYOR CARLO DEMARIA'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

The Plaintiffs, Priya Tahiliani and Kim Tsai, oppose Defendants, the City of Everett's ("City") and Mayor Carlo DeMaria's ("Mayor"), Motion for Entry of a Protective Order ("Motion" or "Mot.").

## I.   INTRODUCTION

Plaintiffs requested documents from the City last October. The City produced nothing during that time save for a dozen documents and no emails for 165 days, nearly half a year. Plaintiffs were forced to move to compel the production, doing so on a Friday (April 11), and the following Monday, the City finally produced over 41,000 documents. Plaintiffs' IT vendor quickly identified that 1,826 potentially privileged emails and attachments were included in that production, or over 4% of the production. The vendor made this determination swiftly, simply by searching the production for email domains for known counsel to the City.

1

The City's lack of care waived any potential privilege over those emails. The City had over five months to compile and review the emails. A simple IT search, which would have taken only hours, would have (and should have) identified these emails for further review. Any review would have revealed the same, as the emails' authors and recipients include known lawyers, including the City's Solicitor and outside counsel. Under Fed. R. Evid. 502 and applicable case law, the City was obligated to exercise reasonable care to review and segregate privileged documents. It did not, instead producing over 1,800 such documents, or nearly 4.5% of all the documents it produced. The City's Motion only underscores its carelessness, conceding that no lawyers' eyes — or possibly even human eyes — reviewed these documents, or even a subset of the documents, and offers no facts or evidence to show that the City engaged in *any* process *whatsoever* to protect its privilege.

For the reasons set forth below, the Court should deny the Motion. Defendants fail to establish in their Motion that the City took even the most basic precautions to protect these documents. And, mere months from the trial-ready date in this case, Plaintiffs should not be forced to wait for the City to review them now, to determine which should be produced and which should not. The City chose months ago to engage in gamesmanship, delaying for months to produce documents, and then failed to exercise basic and reasonable precautions. Defendants have waived their privilege.

## II.     BACKGROUND

The Motion concerns Plaintiffs' Request for Production on the Defendant City of Everett served last Halloween, on October 31, 2024. The chronology is as follows:

- **October 31, 2024:** Plaintiffs serve the Requests. *See* Ex. A.[1]

---

[1] All exhibits referenced herein are attached to the Affidavit of Andrew N. Bettinelli, Esq.

- **December 11, 2024 (41 days after Requests):** Defendants request to extend the time to respond to January 10, 2025. *See* Ex. B.

- **January 8, 2025 (69 days after Requests):** Plaintiffs agree to a request by the City's counsel for a further two-week extension. *See* Ex. C.

- **January 26, 2025 (87 days after Requests):** The City produces a dozen documents responsive to the requests, most of which are documents originally created by the Plaintiffs or that the Plaintiffs previously had obtained. The City's counsel also states that "the search for emails has proven to be more time consuming than expected, and I'll produce those as soon as I can." *See* Ex. D.

- **January 30, 2025 (91 days after Requests):** Counsel conference and Plaintiffs again agree to an extension to produce documents to March 31, 2025, based in part on representations by the City's counsel that tens of thousands of documents were forthcoming, and they needed time to review. *See* Bettinelli Aff. ¶ 6.

- **March 24, 2025 (144 days after Requests):** The City's counsel represents that "[w]e are awaiting voluminous email production from the City's IT dept but that has taken longer than expected. 'Any day now' is the status of our second production." Inferably, the documents have not yet even been reviewed by human eyes, as the IT department has yet to provide them. *See* Ex. E.

- **March 31, 2025 (151 days after Requests):** Notwithstanding the prior representation, the City does not supplement its production. *See* Bettinelli Aff. ¶ 8.

- **April 3, 2025 (154 days after Requests):** Counsel conference once again, and the City's counsel states that they still have yet to receive any further documents from the City. *See* Bettinelli Aff. ¶ 9.

- **April 11, 2025 (162 days after Requests):** Plaintiffs move to compel the City's delinquent production. *See* Docket Nos. 52 and 53.

- **April 14, 2025 (165 days after Requests):** The City produces 41,263 documents, and Plaintiffs withdraw their motion to compel. *See* Ex. F; Docket No. 54.

Upon receipt of the production from the Defendants, Plaintiffs' counsel successfully downloaded the materials. After determining the volume, Plaintiffs engaged an e-discovery vendor on May 2, 2025. *See* Jones Aff. ¶ 3. Following a first round of document processing, the vendor quickly identified emails to and from the City Solicitor, as well as emails to and from various law firms, based solely on the email domains of the senders and recipients. By selecting a set of outside counsel email domains, the vendor identified 1,826 potentially privileged emails and attachments, or approximately 4.4% of all documents produced.[2] *See* Jones Aff. ¶ 16. The vendor noted that "[g]iven the volume of materials in the collection that involved the City Solicitor and/or outside counsel, I do not believe that the person(s) exporting these materials took any precautions to avoid the collection of attorney-client privileged material or work product from the search results." *See* Jones Aff. ¶ 9. Further, she offered that "any reasonably competent attorney would know that running search terms that included the names of the Plaintiffs across the emails of senior staff in Everett's City Hall, including the City Solicitor, would result in a substantial volume of potentially privileged material." *See* Jones Aff. ¶ 10. It should be noted that this list does not include the City Solicitor or Assistant Solicitors, so the "amount of potentially privileged communications produced may well exceed this total." *See* Jones Aff. ¶ 18.

---

[2] Emails to or from: @gcattorneys.com; @gtlaw.com; @saul.com; @k-plaw.com; @mhlattys.com; @fmglaw.com; @mlmlawfirm.com; @litchfieldcavo.com; or @morrisonmahoney.com.

Following this discovery, Plaintiffs' counsel ordered the potentially privileged material segregated from the other documents and refrained from reviewing the same. *See* Bettinelli Aff. ¶ 15; Jones Aff. ¶ 19. On May 8, 2025, Plaintiffs' counsel notified the City's counsel that Plaintiffs viewed any potential privilege as waived. *See* Ex. G.

### III.   ARGUMENT

Protective orders should not be granted where good cause does not exist to issue the requested protection. *See* Fed. R. Civ. P. 26(c)(1) (providing that a party "from whom discovery is sought may move for a protective order…" and "[t]he court may, for *good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…") (emphasis added). This "'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959–60 (D.C. Cir. 1999)).

Such good cause only exists to protect the disclosure of privileged material if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b). Notwithstanding the subsequent enactment of Rule 502, judges of the U.S. District Court for the District of Massachusetts, and other federal courts have adopted and continued to use a five-factor test outlined in *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 291 (D. Mass. 2000).[3] Those five factors essentially mirror, in greater detail, considerations relevant to

---

[3] *See also United States ex rel. Omni Healthcare, Inc. v. MD Spine Sols. LLC,* 736 F. Supp. 3d 75, 82 n. 6. (D. Mass. 2024)

factors (2) and (3) in Fed. R. Evid. 502(b): (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice. *Amgen*, 190 F.R.D. at 291.

It is well established that "the party who invokes the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasons," will not meet that burden. *Kaiser v. Kirchick*, 2022 WL 182375, at *4 (D. Mass. Jan. 20, 2022) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

**A.    Defendants Have Waived Any Privilege under the *Amgen* Five-Factor Test.**

Each of the five *Amgen* factors weighs in favor of a privilege waiver.

**1.    Factor (1) (Reasonableness of Steps)**

Defendants make no showing that they exercised reasonable precautions to avoid producing the documents at issue. Their Motion provides no details, explanation, or facts to demonstrate any process whatsoever and offers no affidavit or evidence to establish that a process even existed.

In *Amgen*, the producing party had outsourced the copying of documents to a vendor, the court found that "a knowledgeable attorney or legal assistant should quickly have reviewed the performance of the vendor to ensure that the proper documents were copied. The ease with which this disclosure could have been prevented informs the Court's ruling that Choate's precautions were not reasonable." *Amgen*, 190 F.R.D. at 292. In *Omni Healthcare,* the Court also observed that "[r]elying on a party to conduct its own review without counsel's involvement, at

6

least in part, is hardly a reasonable precaution." *Omni Healthcare, Inc.* 736 F. Supp. 3d at 83 (citations omitted).

Finally, that the defendants unilaterally "maintain the right to claw back any inadvertently or mistakenly produced privileged documents" in their transmittal email is not nearly enough. *See* Ex. F. Neither of the measures described by the defendants can be construed as a "reasonable precaution." Based on the contents of the motion, it is implied that the defendants' counsel did not conduct a review of the documents before production or filing of the motion. They likely still do not know what was produced, and in doing so have effectively placed the cost and burden of privilege review on the Plaintiffs. Furthermore, Plaintiffs' e-discovery vendor has identified approximately 1,826 potentially privileged documents for this case, as well as other matters, out of 41,263 total documents, or 4.4%. *See* Jones Aff. ¶¶ 13, 17. And this total may well be much higher. *See* Jones Aff. ¶ 18. The scope of this disclosure would suggest that *no* precautions were taken to prevent disclosure. *See* Jones Aff. ¶ 9.

The Motion offers that "defendants' counsel relied upon its clients' internal legal department and Information Technology Department to appropriately cull privileged material from its production." *See* Docket No. 57, p. 2. Nothing more. That is less effort taken by the parties in *Amgen* or *Omni Healthcare*, both of which were not sufficient to protect the privilege. And those efforts were wholly inadequate, falling well short of the threshold of reasonableness.

### 2.   Factor (2) (Time to Recognize Error)

Courts have found support for waiver for a wide range of delays for post-disclosure activity, from just 5 days to more than 2 years. *See Amgen,* 190 F.R.D. at 292*;* and *Omni Health Care, Inc.,* 736 F. Supp. 3d at 85. The Defendants produced the documents on April 14, 2025. On May 8, 2025, Plaintiffs informed Defendants' counsel of the production of potentially

privileged materials, a period of 25 days, during which the Defendants took no steps to attempt to clawback any documents. In the circumstances of these Requests, where Defendants engaged in ongoing discovery gamesmanship, delaying even their production by well over 100 days, their subsequent delay to identify their error weighs in favor of a waiver.

### 3. Factors (3) (Scope of Production)

When a "disclosure was… substantial "as compared to the size of [the] production,"… it was not "a reasonable mistake" and weighs in favor of waiver. *Kaiser v.* WL 182375 at *9 (citations omitted). In *Amgen,* approximately 200 of 70,000 documents (0.28%) were privileged, which the court described as "a substantial release" and noted that "the scope of the disclosure… is dramatic." *Amgen,* 190 F.R.D. at 293. In *Omni Healthcare,* a release of 613 of 91,202 documents (0.67%) was given neutral weight as a factor, but nevertheless, the court found waiver had occurred. *Omni Healthcare, Inc.* 736 F. Supp. 3d at 83.

Here, the disclosure is magnitudes greater than in *Amgen* or *Omni Healthcare*. Plaintiffs' e-discovery identified 1,826 potentially privileged documents, out of 41,263 total documents, or 4.4%. *See* Jones Aff. ¶¶ 13, 17. To identify this group of documents, the e-discovery vendor identified the domains of law firms representing the city in this and other matters. *See* Jones Aff. ¶¶ 16,17. This total does not include all emails sent or received by the City Solicitor or other members of the City's in-house legal department, so the scope of production of privileged materials is likely even greater than this already substantial total suggests. *See* Jones Aff. ¶ 18. This is not a case of "an occasional inadvertently-produced document or documents," but indicates that there was no attempt to conduct a privilege review. *Marrero Hernandez v. Esso Standard Oil Co.*, 2006 WL 1967364, at *4 (D.P.R. July 11, 2006).

### 4. Factor (4) (Extent of Disclosure)

The extent of the disclosure concerns "both the number of documents produced and the number of individuals who have already seen the documents," as well as the "length of time for which they possessed those documents." *Kaiser*, 2022 WL 182375, at *9; *Amgen*, 190 F.R.D. at 293. Multiple-year-long periods of disclosure, where multiple parties had viewed the materials, have been found to weigh heavily in favor of waiver. *See e.g. Omni Health Care,* 736 F.Supp.3d at 86 (three-year period of disclosure and at least a partial review by multiple parties); *Kaiser*, 2022 WL 182375 at *9 (two-year period of disclosure and viewed by other counsel and presumably forwarded to their clients). However, in *Amgen*, the Court found the extent of disclosure to weigh in favor of waiver, even where a receiving party had "suspended review of the documents until this Court issues an order" where it was clear that other personnel were involved in reviewing the disclosed documents. *Amgen*, 190 F.R.D. at 293.

Here, counsel for all parties, support staff, vendors, and perhaps all clients have had access to this potentially privileged material for more than a month, since the Defendants produced it on April 14, 2025. Upon receipt of the production from the Defendants, Plaintiffs' counsel successfully downloaded the materials, and support staff uploaded some of the .pst files into Microsoft Outlook. *See* Bettinelli Aff. ¶ 11. Counsel forwarded an email with a link to the Defendants' production to the Plaintiffs. *See* Bettinelli Aff. ¶ 12. Due to the volume of production, Plaintiffs engaged an e-discovery vendor who was the first to bring the matter of privileged materials to Plaintiffs' attention. *See* Bettinelli Aff. ¶ 14. Due to the large number of recipients who may have had access to the potentially privileged materials, and the length of time that they have had such access, the extent of disclosure here weighs in favor of waiver.

### 5.     Factor (5) (Fairness and Justice)

If any factor weighs in favor of a privilege waiver, none weighs heavier than Factor (5): the interests of fairness and justice. This factor is laid out succinctly in *Amgen*: "The overriding interests of fairness and justice also dictate the recognition of a waiver of the privileges. While the Court is sensitive to the fact that [a party] may be disadvantaged by the carelessness of its attorneys, it would be *unjust to reward such gross negligence by providing relief from waiver*. In fact, if the Court does not hold that a waiver has occurred under the egregious circumstances here presented, it might as well adopt the "never waived" rule and preclude such a holding in all cases." *Amgen*, 190 F.R.D. at 293 (emphasis added).

Here, fairness and justice weigh heavily in favor of waiver. Defendants' counsel admits that they intentionally did not review the production and justify doing so "in an effort to be economical and keep legal costs low for its clients." *See* Docket No. 57*,* p. 2. Even worse, they engaged in discovery gamesmanship and failed to produce these documents for ***165 days,*** notwithstanding their choice not to review the documents. Mere months separate this case from its ready-for-trial date. The Court should brook no further delay and should hold Defendants accountable for their egregious lack of care when producing these documents, and their efforts to delay and stymy the very production of these and other documents in the first place.

**B.**     **The Confidentiality Agreement Does Not Apply to Inadvertent Disclosures of Privileged Documents.**

The Defendants argue in the alternative that Paragraph 11 of Docket No. 51, the Stipulated Protective Order and Confidentiality Agreement, should be enforced. *See* Docket No. 57*,* p. 2-3. But this agreement does not apply to privileged materials, and enforcement of Paragraph 11 would not provide the relief the defendants are seeking.

Under the agreement, the Parties are entitled to designate as "CONFIDENTIAL" information documents that they produce in discovery that "contains information that constitutes (a) proprietary or sensitive business, personal, medical, or financial information or (b) information subject to a legally-protected right of privacy." *See* Docket No. 51, ¶ 2. Designation of confidential information, which is then produced pursuant to the order, cannot encompass privileged materials, as Counsel has a professional obligation *not* to produce privileged materials.

The Stipulated Protective Order and Confidentiality Agreement is inapplicable to privileged materials. Put simply, it is a basic and frequently used form of protection well-known to all litigators, allowing for the exchange of discovery materials among the parties without disclosing them to the public domain. That it does not extend to claims of privilege is inherent in its very structure: under the agreement, even confidential materials are *exchanged* amongst the parties, not *withheld* as the parties would do with privileged materials or as the Defendants seek through their Motion. Indeed, even if Defendants were correct, and the agreement applied, then under Paragraph 11, Defendants would still have to provide these documents to Plaintiffs, just with a "CONFIDENTIAL" designation:

> "Inadvertent or unintentional production of documents containing information that should have been marked "Confidential" shall not be deemed a waiver in whole or in part of the producing Party's claim of protection or confidentiality, so long as the producing Party, promptly after discovery of the inadvertent or unintentional production, notifies the other Party or Parties of the claim of protection or confidentiality. Upon such notice, the other Party or Parties shall provide in writing that the inadvertently or unintentionally produced documents, and all copies thereof, have been destroyed. *The producing Party shall within five days of such notice provide identical properly marked documents*." *See* Docket No. 51, ¶ 11 (emphasis added).

This outcome would be illogical and further supports that the agreement has no application here.

But the Court need not go so far in its analysis. The Stipulated Protective Order and Confidentiality Agreement have nothing to do with privilege. They govern the different issues of the exchange of sensitive, confidential information that an opposing party, but not the public, has the right to view. This is distinct from the issue of privileged materials, which an opposing party (absent a waiver) has no right to view, and would be governed, if the parties agreed to one, through a separate clawback agreement. Here, there was no such clawback agreement. The defendants' argument is nothing more than misdirection, an attempt to obfuscate their own discovery failures.

**C.    The Court Should Order Payment of the Expenses and Attorneys' Fees Incurred in Responding to the Defendants' Motion**

The Court may order the payment of a party's reasonable expenses and attorney's fees incurred in successfully opposing a motion for a protective order. Fed. R. Civ. P. 37(a)(5)(B). The Court must not order fees and costs "if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.* Substantially justified is one that could satisfy a reasonable person. *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., 295 F.3d 108, 117 (1st Cir. 2002)*

Here, by Defendants' admission, the Plaintiffs are forced to oppose this motion for a protective order because Defendants' counsel intentionally failed to review the production, justifying this omission "in an effort to be economical and keep legal costs low for its clients." *See* Docket No. 57, p. 2. Plaintiffs should not have to bear the cost of the Defendant's negligence, and the Court should award expenses and fees.

## IV.   CONCLUSION

For all the reasons set forth above, the Court should deny the motion for entry of a protective order by the City and Mayor DeMaria, deem that the attorney-client privilege and work product doctrine have been waived for the documents produced by the Defendants on April 14, 2025, and order reasonable expenses and attorney's fees incurred in opposing this motion.

Respectfully submitted,
The Plaintiffs,
Priya Tahiliani and Kim Tsai,
By their counsel,

*/s/ Andrew N. Bettinelli*

_____
Christopher L. Brown (BBO# 663176)
Ivria Glass Fried (BBO# 688177)
Andrew N. Bettinelli (BBO# 703220)
Harrington Heep LLP
40 Grove Street, Suite 190
Wellesley, MA 02482
(617) 489-1600
cbrown@harringtonheep.com
ifried@harringtonheep.com
abettinelli@harringtonheep.com

Dated: May 22, 2025

**Certificate of Service**

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as nonregistered participants on April 10, 2025.

Dated: May 22, 2025　　　　　　　　　　　　　*/s/ Andrew N. Bettinelli*
　　　　　　　　　　　　　　　　　　　　　　Andrew N. Bettinelli (BBO# 703220)
　　　　　　　　　　　　　　　　　　　　　　Harrington Heep LLP
　　　　　　　　　　　　　　　　　　　　　　40 Grove Street, Suite 190
　　　　　　　　　　　　　　　　　　　　　　Wellesley, MA 02482
　　　　　　　　　　　　　　　　　　　　　　(617) 489-1600
　　　　　　　　　　　　　　　　　　　　　　abettinelli@harringtonheep.com