UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PRIYA TAHILIANI and KIM TSAI

Plaintiffs,

v.

CITY OF EVERETT, MAYOR CARLO DEMARIA, CITY OF EVERETT SCHOOL COMMITTEE, WILLIAM HART, JEANNE CRISTIANO and MICHAEL MANGAN,

Defendants.

Civil Action No.: 1:24-CV-10544-WGY

**AFFIDAVIT OF SARA PERKINS JONES, ESQ. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS CITY OF EVERETT AND MAYOR CARLO DEMARIA'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

I, Sara Perkins Jones, under oath, depose and state as follows:

1. I am an attorney in good standing admitted to practice in Massachusetts and have more than 12 years of e-discovery experience, both as a practicing litigator and as an e-discovery consultant, and I have personal knowledge of the facts stated in this affidavit.

2. From 2013-2022 I worked as a litigator at large and mid-sized law firms in Boston. In 2022, I founded Spark eDiscovery to provide small and mid-sized litigation firms with e-discovery services.

3. On May 2, 2025, I was engaged by Attorney Christopher L. Brown of Harrington Heep LLP, to convert approximately 50 GBs of .PST files to .PDF files for review, and to reduce the total volume of documents by de-duplicating and threading emails.

1

4. A .PST is a container file created by exporting emails from a Microsoft Outlook client or from a Microsoft enterprise email system. Its contents can only be viewed using Microsoft Outlook or a third-party application.

5. I received 9 .PST files as follows:

| | |
|---|---|
| discrimination 2017 - 2024_1.pst | 8.01 GB |
| Camera Superintendent_1.pst | 7.53 GB |
| Complaint DeMaria 2019-2024.pst | 6.55 GB |
| Complaint Tahiliani.pst | 1.3 GB |
| Complaint Tsai.pst | 1.14 GB |
| Camerai Tahiliani.pst | 580.3 MB |
| 2021 charter amendment_1.pst | 399.8 MB |
| 2021 charter amendment_2.pst | 312.9 MB |
| Camera Superintendent_2.pst | 271.7 MB |

6. I processed these files into Everlaw, which is a secure cloud-based eDiscovery platform. Everlaw extracted the native emails and attachments from the PSTs, and processed the metadata (date sent, date created, subject line, to/from, etc.).

7. I was not aware of who was acting as opposing counsel in Attorney Brown's matter, but did know the names of the parties from my conflict check.

8. I subsequently accessed the docket on PACER to confirm my suspicion that some materials in the collection were communications between the City and its counsel concerning this and other matters.

9. Given the volume of materials in the collection that involved the City Solicitor and/or outside counsel, I do not believe that the person(s) exporting these materials took any

precautions to avoid the collection of attorney-client privileged material or work product from the search results.

10. In my opinion, any reasonably competent attorney would know that running search terms that included the names of the Plaintiffs across the emails of senior staff in Everett's City Hall, including the City Solicitor, would result in a substantial volume of potentially privileged material.

11. As a litigator and as an eDiscovery professional, I would never recommend that a client produce a .PST file without (a) understanding how the searches were conducted and (b) examining the materials personally. If these materials were exported from Microsoft 365 or from an email archiving service, both inside and outside counsel could have reviewed the set in the 365 or archive portal prior to exporting a .PST.

12. Moreover, it is my experience that such services allow the party collecting materials for export to obtain a spreadsheet index of all emails and attachments in the .PST, showing metadata including subject, to/from/cc, date sent, etc.

13. After processing the .PST files, I ended up with 41,263 total documents, both emails and attachments.

14. After processing, I exported a list of all email senders in the collection, so that I could identify and exclude emails like news blasts, MassDOT bulletins, and other similar emails likely to be irrelevant to the present dispute. I noticed that there were several emails to or from law firm domains, which led me to suspect that the production may contain attorney-client privileged material.

15. I accessed the segregated material only to the extent necessary to determine the nature of its contents, and to determine which firms and attorneys were representing the city, as distinguished from those representing opposing or separate parties.

16. After notifying Attorney Brown that I suspected that the production contained potentially privileged material, I identified the following domains of law firms that exchanged emails with the City Solicitor for segregation: @gcattorneys.com; @gtlaw.com; @saul.com; @k-plaw.com; @mhlattys.com; @fmglaw.com; @mlmlawfirm.com; @litchfieldcavo.com; and @morrisonmahoney.com.

17. By selecting emails and their attachments to or from the domains listed in ¶ 16, I identified 1,826 potentially privileged documents, or approximately 4.4% of all documents produced.

18. The total provided in ¶ 17 does not include communications between the City and the City Solicitor or Assistant Solicitors, so the total amount of potentially privileged communications produced may well exceed this total.

19. I did not share anything other than metadata with Attorney Brown.

SIGNED UNDER PAINS AND PENALTIES OF PERJURY THIS 21st DAY OF MAY, 2025.

                                          *Sara Perkins Jones*
                                          Sara Perkins Jones

## Certificate of Service

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants.

Dated: May 22, 2025

*/s/ Andrew N. Bettinelli*
Andrew N. Bettinelli (BBO# 703220)
Harrington Heep LLP
40 Grove Street, Suite 190
Wellesley, MA 02482
(617) 489-1600
abettinelli@harringtonheep.com