UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PRIYA TAHILIANI AND KIM TSAI,

        Plaintiffs,

v.

CITY OF EVERETT, MAYOR CARLO
DEMARIA AND CITY OF EVERETT SCHOOL
COMMITTEE, WILLIAM HART, JEANNE
CRISTIANO, AND MICHAEL MANGAN,

        Defendants.

Dkt. No: 1:24-CV-10544-WGY

**DEFENDANTS CITY OF EVERETT SCHOOL COMMITTEE, WILLIAM HART,
JEANNE CRISTIANO AND MICHAEL MANGAN'S MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER**

Pursuant to Fed. R. Civ. P. 26(c)(1), Defendants the City of Everett School Committee,

Jeanne Cristiano ("Ms. Cristiano"), Michael Mangan ("Mr. Mangan") (collectively, the "School

Committee") and William Hart ("Mr. Hart") respectfully move for the entry of a Protective Order

requiring Plaintiffs Priya Tahiliani ("Ms. Tahiliani") and Kim Tsai ("Ms. Tsai") (collectively,

"Plaintiffs") and the Defendant the City of Everett ("City") to destroy all written communications

in their possession between the School Committee and its attorneys, which are protected by the

attorney-client privilege. Hundreds of emails between the School Committee's counsel and the

School Committee were produced by counsel for the City without authorization by the School

Committee and/or waiver of its attorney-client privilege. Plaintiffs' counsel has refused to destroy

these communications upon timely request by counsel for the School Committee. Notably, this

issue has *not* been addressed by this Court in earlier motion practice, which solely concerned the

City's own privileged communications within its document production. The legal analysis for

City's inadvertent disclosure is distinct from the analysis concerning the unauthorized disclosures

1

of School Committee communications, and the School Committee now seeks to protect its privileged communications via Protective Order by this Court.

## <u>INTRODUCTION</u>

The School Committee and City have different counsel and their interests in this lawsuit are distinct. As this Court is aware, the City and Plaintiffs recently engaged in motion practice after the City moved for a protective order related to its own privileged communications disclosed within its April 14, 2025 document production. <u>See</u> Dkt. No. 57, 60. On Wednesday, May 28, 2025, this Court denied the City's motion for protective order. <u>See</u> Dkt. No. 61. This motion practice solely concerned whether the *City* had waived its privilege with respect to communications that the City itself produced in its document production.

As set forth more fully herein, the School Committee discovered for the first time on May 28, 2025, that the *City's document production included privileged communications between the School Committee and its attorneys concerning multiple unrelated legal matters and this litigation.* The School Committee is an innocent bystander in the City's document production. The School Committee was not involved in the City's document production, was not provided the opportunity to review any of the City's documents prior to their production in this case, and did not consent to the inclusion of any of its privileged communications within the City's document production. The School Committee had no reason to believe its own members' email communications would be included in a different Defendant's document production. The School Committee now moves this Court to enter a Protective Order requiring Plaintiffs to destroy the School Committee's privileged communications with its counsel contained within the City's document production.

## RELEVANT BACKGROUND

On April 14, 2025, the City produced a supplemental document production consisting of a total of 40,973 documents in response to Plaintiffs' Requests for the Production of Documents. See Exhibit A, Affidavit of Alexandra F. Held, Esq., ¶ 3.

On May 8, 2025, Plaintiffs' counsel emailed counsel for the City and stated: "As our ediscovery team has been processing the April 14th electronic production by the City, I am letting you know pursuant to MRPC Rule 4.4(b) that we received in the production records that appear to be privileged." See Held Aff., Ex. 1. Counsel for the School Committee were copied on this correspondence. See id. That same day, counsel for the City requested that Plaintiffs' counsel return and/or destroy any inadvertently produced documents subject to privilege or work product doctrines. See id. Counsel for Plaintiffs replied that they would not agree to return or destroy anything, but would hold off on reviewing the disputed records until the following Monday if Counsel for the City wanted to file a motion with the Court. See id. Counsel for the City and Plaintiffs continued to exchange emails about this issue. See id. In his final correspondence to counsel for the City on the issue, Counsel for Plaintiffs stated: "There are probably over 1,000 emails between the City Solicitor and various outside counsel, including your firm, about this case and our clients generally. I had our ediscovery vendor segregate them so we have not looked at any of them. As I said provided you file a motion by Monday we will continue to hold off on looking at them…" See id.

At no point during the May 8, 2025 email exchange did counsel for Plaintiff state that the *School Committee's* privileged communications with its counsel were included in the City's document production. See Held Aff. ¶ 8. At that time, counsel for the School Committee believed that the only privileged documents included in the City's production were between the City and the City's attorneys. See Held Aff. ¶ 8. As Plaintiffs' counsel stated he had segregated the

privileged documents and would not look at them pending the Court's decision on a motion, counsel for the School Committee also ceased review of the City's document production pending a decision from this Court. <u>See</u> Held Aff. ¶ 9.

On May 11, 2025, the City filed a Motion for Protective Order related to its privileged documents included in its document production. <u>See</u> Dkt. No. 57. On May 22, 2025, the Plaintiffs filed an Opposition to the City's Motion for Protective Order. <u>See</u> Dkt. No. 60. In their papers, Plaintiffs, for the first time, indicated that they had found emails using the search term "@fmglaw.com" within the City's document production. <u>See</u> Dkt. No. 60.

On Wednesday May 28, 2025, following the entry of the Court's Order, counsel for the School Committee resumed their search of the City's document production, beginning with a search for "@fmglaw.com" given that the Plaintiffs represented they had found documents responsive to that search term in their own search of the City's document production. <u>See</u> Held Aff. ¶ 14-15. That day, counsel for the School Committee discovered that the City produced well over one hundred privileged communications between the School Committee and its counsel concerning this litigation and other legal matters. <u>See</u> Held Aff. ¶ 15.

On Thursday May 29, 2025, counsel for the School Committee notified Plaintiffs' counsel of the City's unauthorized disclosure of the School Committee's privileged communications, for which the School Committee is blameless, and requested that counsel destroy these privileged communications given that the School Committee did not produce these documents and did not waive its privilege. <u>See</u> Held Aff., Ex. 2.[1] Plaintiffs' counsel responded to this correspondence and

---

[1] Counsel for the School Committee specifically requested: "Please destroy any documents that were segregated by your vendor using the search term "@fmglaw.com". Should you encounter any other privileged communications from our office that for some reason are not turned up using that search term, we ask that you destroy them immediately. Along those same lines, our clients have not waived *any* privilege, including the attorney-client privilege they hold with administrative counsel for the School Committee, Attorney Bob Galvin. Should you encounter any privileged communications between Attorney Galvin and members of the School Committee, please destroy those communications. The City's document production was not bates-stamped, so I am unable to refer you to specific bates

stated they would not agree to this request. See id. Counsel for the School Committee sent another email to Plaintiffs' counsel that evening clarifying, amongst other things, the extent of the City's disclosure of privileged communications. See id. On Friday May 30, 2025, counsel for the School Committee conferred with Plaintiffs' counsel on this issue in accordance with L.R. 37.1. See Held Aff. ¶ 22. Plaintiffs' counsel refuses to destroy the privileged communications. See Held Aff. ¶ 22. Hence, the instant Motion is necessary.

## ARGUMENT

Under Fed. R. Civ. P. 26(c)(1), "a party or any person from whom discovery is sought may move for protective order in the court where the action is pending" and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense…." Rule 502 of the Federal Rules of Evidence states that in the event of the disclosure of privileged communication or information in a federal proceeding, "a federal court may order that that the privilege or protection is not waived by disclosure connected with the litigation pending before the court…." Fed. R. Evid. 502(d). Fed. R. Evid. 502(b) further states that in the event of an *inadvertent disclosure* in a federal proceeding, the disclosure does not constitute a waiver of the privilege if: "(1) the waiver is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." See Fed. R. Evid. 502(b). As the party invoking its privilege, the School Committee bears the burden of establishing that the privilege applies to the communications at issue and that the privilege as not been waived. See In re Keeper (Grand Jury Subpoena Addressed

---

numbers to remove and delete from the production. We do not wish to delay your review of the production and we believe that our request will allow you to quickly destroy previously segregated documents and then destroy privileged communications you encounter during your review." See Held Aff at Ex. 2.

to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003). Plaintiffs' counsel refuses to destroy the School Committee's privileged communications despite acknowledging the School Committee is not the party that produced the communications. See Held Aff. ¶ 22.

I.    **Legal Analysis Concerning Unauthorized Disclosure of Privileged Communications by Third Party.**

The legal analysis applicable to the School Committee's Motion for Protective Order is distinct from the City's Motion for Protective Order given that the City's Motion concerned an instance of *inadvertent* disclosure of privileged communications, while the School Committee's Motion concerns *unauthorized* disclosure of privileged communications by a third party (the City). Plaintiffs' Opposition to the City's Motion for Protective Order applied the five-factor test set forth in Amgen Inc. v. Hoechst Marion Roussel, Inc., to argue that the City's inadvertent disclosure of privileged materials in its document production constituted a waiver of the City's attorney-client and work product privileges. See 190 F.R.D. 287, 292 (D. Mass. 2000). The Amgen factors include: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." See id.

While a few of the factors set forth in Amgen are appropriate inquiries for the School Committee's present motion, to apply the Amgen test to an unauthorized disclosure would have the effect of holding the School Committee responsible for the actions of the City. A test that is, in part, designed to evaluate whether a litigant took reasonable steps to protect privileged documents from disclosure prior to producing documents is not entirely applicable to the present circumstances because the School Committee played no part in the production of the privileged communications between the School Committee and its counsel. Specifically, the first, second and

third Amgen factors— "(1) reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, [and] (3) the scope of the production" are not relevant here because the School Committee was not the party that produced the privileged communications.[2] To hold the School Committee accountable for actions, or inactions, of the City, over which the School Committee had no consent or control, would be patently unfair.

The U.S. District Court for the District of Massachusetts and other federal district courts have applied the five-factors set forth in Amgen to instances where, as here, the party moving to protect their privileged communications is *not* the party that produced the privileged communications in the first instance. See Santiago v. Lafferty, No. 13-CV-12172-IT, 2015 WL 717945 at *6, n.5 (D. Mass. Feb. 19, 2015) (applying Amgen test to allegedly unauthorized third-party disclosure, but reserving ruling on whether all claims of unauthorized disclosure should be assessed under this test); In re Grand Jury Subpoena Dated Mar. 20, 2013, No. 13-MC-189, 2014 WL 2998527 at *12 (S.D.N.Y. July 2, 2014) (applying Amgen factors in case of unauthorized disclosure). Notably, "[i]n cases of unauthorized disclosure, courts especially focus on the privilege-holder's actions after learning of the unauthorized disclosure." See In re Grand Jury Subpoena, 2014 WL 2998527 at *12 (citing Koch v. Greenberg, No. 07 CIV. 9600 BSJ DF, 2012 WL 1449186 at *7 (S.D.N.Y. Apr. 13, 2012).

---

[2] The case law addressing the Amgen factors in cases of inadvertent disclosure by a producing party further underscores that they are not applicable to the School Committee's Motion. United States ex rel. Omni Healthcare, Inc. v. MD Spine Sols. LLC, 736 F. Supp. 3d 75, 82-83 (D. Mass. 2024) (analyzing first Amgen factor by scrutinizing producing party's process for screening out privileged materials and analyzing second Amgen factor by evaluating time following production that producing party took action to protect privilege); Santiago v. Lafferty, No. 13-CV-12172-IT, 2015 WL 717945, at *7 (D. Mass. Feb. 19, 2015) (analyzing third Amgen factor by determining whether portion of privileged communications produced as compared to size of production suggested "reasonable mistake" by producing party).

Accordingly, the focus of this Court's inquiry should be on the School Committee's actions *after* it learned that the City's document production included the School Committee's privileged communications. Additionally, the fourth and fifth <u>Amgen</u> factors— "(4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice," (<u>Amgen</u>, 190 F.R.D. at 292) can be examined here as these inquiries are not centered around the actions of the producing party unlike the first three <u>Amgen</u> factors. As set forth below, the timeliness inquiry and fourth and fifth <u>Amgen</u> factors favor a finding of nonwaiver of privilege by the School Committee.

**II.    The School Committee Timely Sought to Protect its Privileged Communications by Alerting Opposing Counsel of the City's Unauthorized Disclosure and Seeking Judicial Intervention.**

The School Committee took prompt action after its attorneys discovered that its privileged communications were produced by the City. The School Committee became aware that its communications with its counsel concerning this lawsuit, and other legal matters, were included in the City's document production on May 28, 2025. <u>See</u> Held Aff. at ¶ 13-15. The next day, May 29, 2025, counsel for the School Committee notified Plaintiff's counsel of the discovery, asserted the School Committee had not waived its privilege, and requested that the privileged communications be destroyed. <u>See</u> Held Aff., Ex. 2. On Friday, May 30, 2025, counsel for the School Committee met with Plaintiff's counsel to discuss the issue, in accord with L.R. 37.1, at which time Plaintiffs' counsel stated they would not agree to destroy the School Committee's privileged communications. <u>See</u> Held Aff. at ¶ 22. On Monday June 2, 2025, the School Committee filed the present motion seeking a Court Order to protect the School Committee's privileged communications.

The School Committee promptly acted to protect its privileged communications with its counsel the day after it discovered that these communications were produced by the City by contacting Plaintiffs' counsel and requesting the destruction of the privileged communications.

The present motion was filed one business day after counsel for the School Committee determined that Plaintiffs' counsel would not recognize the School Committee's privilege.

The School Committee has met its "obligation to make reasonable efforts to remedy the breach of confidentiality caused by the [City's] production and preclude their known adversary from making use of the information." Hache v. AIG Claims, Inc., 607 F. Supp. 3d 100, 116 - 118 (D. Mass. 2022) (scrutinizing defense counsels' delay in seeking judicial intervention several months after defense counsel identified privileged documents were disclosed to plaintiff and plaintiff's counsel informed defense counsel that he would not destroy the privileged documents); In re Grand Jury (Impounded), 138 F. 3d 978, 982 (3d Cir. 1998) ("In short, when a party's adversary has obtained possession of a party's work product and refuses to recognize the work product privilege, the party asserting the privilege must move expeditiously for relief."). There is no basis for a finding that the School Committee waived its privilege given the that the privileged communications were produced in this case by a third party, and the prompt action taken by the School Committee to notify opposing counsel of the unauthorized disclosure and to seek judicial intervention.

III. **The Fourth and Fifth** Amgen **Factors Favor Nonwaiver because the Extent of the Unauthorized Disclosure is Limited and Overriding Interests of Fairness and Justice Favor Protection of the School Committee's Privileged Communications.**

i. **Extent of Unauthorized Disclosure Favors Nonwaiver.**

The Amgen factor concerning the "extent of disclosure" relates to the number of people who have viewed privileged materials and whether anything can be "done to reverse the damage" of the disclosure. See Amgen, 190 F.R.D. at 293; see also Kaiser v. Kirchick, No. CV 21-10590-MBB, 2022 WL 182375, at *9 (D. Mass. Jan. 20, 2022) (evaluating extent of disclosure where document production, including privileged communications, had been viewed by all parties and

counsel in four different cases). As it relates to the School Committee's privileged communications contained within the City's document production, this factor favors nonwaiver of the privilege by the School Committee. Plaintiffs' counsel has represented that all potentially privileged documents were segregated by Plaintiffs' eDiscovery vendor and that Plaintiffs' counsel did not review these segregated documents until the Court issued its Order on the City's Motion for Protective Order. See Held Aff., Ex. 1. On May 30, 2025, counsel for Plaintiffs has informed counsel for the School Committee that they had not reviewed the School Committee's privileged documents yet. See Held Aff. at ¶ 22. As such, the extent of the unauthorized disclosure is limited, and the City's disclosure can be fixed simply by destroying the School Committee's segregated privileged communications.

### ii.    Overriding Interests of Fairness and Justice Favor Nonwaiver.

The fifth Amgen factor concerning the interests of fairness and justice also indicates that the School Committee has not waived its privilege. Courts have addressed this factor by evaluating the actions of the attorneys responsible for the disclosure of privileged communications. See Amgen, 190 F.R.D. at 293 (noting although producing party may be disadvantaged by "carelessness of its attorneys, it would be unjust to reward such gross negligence by providing relief from waiver."); Figueras v. Puerto Rico Elec. Power Auth., 250 F.R.D. 94 (D.P.R. 2008) (noting issue of fairness must be judged against the diligence or negligence with which the privileged communications were guarded in regards to production); United States ex rel. Omni Healthcare, Inc. v. MD Spine Sols. LLC, 736 F. Supp. 3d 75, 86 (D. Mass. 2024) (analyzing fairness factor by evaluating whether the two-year span producing party knew they inadvertently disclosed privileged materials was indicative of diligence favoring nonwaiver).

Here, the School Committee is the innocent bystander of the consequences of the City's document production, over which it had no control. Furthermore, the School Committee had no

way of knowing that its privileged communications with its counsel could potentially be included in a third-party's document production. To punish the School Committee for the actions, or inactions, of another party would fly in the face of fairness and justice. Exactly how the School Committee's members' email with their counsel were included in the City's document production is unclear.

The School Committee's attorneys acted promptly to protect the School Committee's privilege by promptly notifying Plaintiffs' counsel that their clients' privileged communications were included within the City's document production. Counsel for the School Committee thoroughly explained the nature of the privileged documents to Plaintiff's counsel in order to convey the gravity of the third-party disclosure to no avail. The present motion was filed the next business day after defense counsel conferred with Plaintiff's counsel on the issue. The School Committee and its attorneys were diligent in their efforts to protect the School Committee's privileged communications.

## **<u>CONCLUSION</u>**

For the reasons set forth herein, the City of Everett School Committee, William Hart, Jeanne Cristiano and Michael Mangan respectfully request that the Court find that the School Committee has not waived its attorney-client privilege and enter a Protective Order requiring Plaintiffs Priya Tahiliani and Kim Tsai, and Defendant the City of Everett, and their counsel, to destroy all written communications in their possession between the School Committee and its attorneys.

Respectfully submitted,

CITY     OF     EVERETT     SCHOOL
COMMITTEE, WILLIAM HART, JEANNE
CRISTIANO AND MICHAEL MANGAN,

By their attorneys,


_____
Janet R. Barringer, BBO # 642442
jbarringer@fmglaw.com
Alexandra F. Held, BBO # 711052
Alexandra.held@fmglaw.com
Freeman, Mathis & Gary LLP
60 State, Sixth Floor
Boston, Massachusetts 02109
(617) 963-5975


Dated: June 2, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be served upon non-registered participants.

_Janet R. Barringer_

Janet R. Barringer