UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRIYA TAHILIANI and KIM TSAI<br><br>               Plaintiffs,<br><br>v.<br><br>CITY OF EVERETT, MAYOR CARLO DEMARIA, CITY OF EVERETT SCHOOL COMMITTEE, WILLIAM HART, JEANNE CRISTIANO and MICHAEL MANGAN,<br><br>               Defendants. | Civil Action No.: 1:24-CV-10544-WGY |

**OPPOSITION TO DEFENDANTS' CITY OF EVERETT SCHOOL COMMITTEE, WILLIAM HART, JEANNE CRISTIANO AND MICHAEL MANGAN'S MOTION FOR ENTRY OF A PROTECTIVE ORDER**

The Plaintiffs, Priya Tahiliani and Kim Tsai, oppose Defendants the City of Everett School Committee, Jeanne Cristiano ("Ms. Cristiano"), Michael Mangan ("Mr. Mangan") and William Hart ("Mr. Hart"), (collectively, the "Defendants") Motion for Entry of a Protective Order ("Motion" or "Mot.").

## I. INTRODUCTION

There are at least 176 emails where School Committee counsel communicated with the Defendants (*i.e.*, from the email domain "@fmglaw.com") and another 236 emails where those Defendants communicated with the School Committee's regular counsel, over 400 emails in total. As with any litigation, School Committee counsel was obligated at the outset of discovery to identify where their clients kept relevant documents, including potentially 400+ emails.

1

Indeed, months ago, School Committee counsel reviewed and served interrogatory responses that identified at least some of the email accounts in question, associated with their clients, Michael Mangan and Jeanne Cristiano, who identified their use of "@ci.everett.ma.us," City email addresses, seperate and distinct from their "@everett.k12.ma.us" School Department email addresses. The School Committee counsel knew of and could have searched those email addresses for privileged or relevant communications months ago. Further, School Committee counsel produced three separate privilege logs for their own document productions, dated February 19, 2025, March 26, 2025, and April 22, 2025, which assert privilege over emails sent to or received from City email addresses, including Mr. Mangan's City email address.

    Notwithstanding these facts, which put School Committee counsel on plain and unavoidable notice that their clients were using City email addresses for relevant, privileged communications, School Committee counsel did nothing to protect that privilege relative to the City's production. Even after the City produced 40,000 documents on April 8, and Plaintiffs' counsel informed all parties that potentially privileged documents were included in that production on May 8, School Committee still failed to act, even by running a rudimentary metadata search to see if emails from their own email domain (@fmglaw.com) were included in that production. Even after Plaintiffs' first Opposition, filed on May 22, that revealed the production contained emails from its own domain, School Committee counsel still did not act, instead choosing to rely on the City's Motion for a Protective Order, which this Court denied.

    For the reasons set forth below, the Court should deny the School Committee's present Motion. The School Committee Defendants fail to establish that they took any reasonable steps to protect these potentially privileged documents from disclosure, despite having been aware of them for months.  The School Committee Defendants have waived their privilege.

2

## II.     BACKGROUND

The Motion concerns documents received in the Defendant City of Everett's voluminous email production on April 14, 2025. The Court is familiar with the circumstances of that production, based on prior motion practice. *See* Docket Nos. 57, 60 & 61. The relevant facts, as they were previously presented, are therefore not repeated here. As applicable to this Motion, the Defendants' supporting affidavit offers that "[w]ithin the City's document production, there are 176 privileged email communications between FMG attorneys and members of the School Committee and/or employees of EPS, generated from the search term "@fmglaw.com". The City's document production also includes approximately 236 email communications between administrative counsel to the School Committee, Attorney Bob Galvin…" *See* Held Aff. ¶ 23.[1]

The School Committee says that it was not until the Plaintiffs filed their first opposition relating to this production on May 22, 2025, that "for the first time[,]" counsel was put on notice that the City's production contained emails from "@fmglaw.com". Def. Mot., p. 4. However, the facts of the School Committee's own productions reveal opportunities to have identified this issue before the May 22nd opposition, particularly concerning one of their clients, Michael Mangan, who possesses a City email account (michael.mangan@ci.everett.ma.us) and apparently uses it for School Committee business.

- The School Committee individual defendants number only three. Counsel for the Defendants were copied on the Plaintiffs' Requests for Production served on the City on October 31, 2024, more than 6 months ago. *See* Ex. A.[2] Basic discovery obligations required counsel to inquire with them concerning where they stored

---

[1] The Affidavit of Alexandra F. Held in support of Def. Mot. is Docket No. 65-1.
[2] All exhibits referenced herein are attached to the Affidavit of Andrew N. Bettinelli, Esq.

3

- relevant documents. That included determining whether those defendants had relevant documents on City email servers.

- In his answers to interrogatories, served on December 6, 2024, Defendant Michael Mangan lists "michael.mangan@ci.everett.ma.us"—a City email account—as one of his email addresses. School Committee counsel signed those interrogatories as to objections, served on all parties, and indeed reviewed the same. *See* Ex. C.

- In her answers to interrogatories, served on December 6, 2024, Defendant Jeanne Cristiano lists "jeanne.cristiano@ci.everett.ma.us"—a City email account—as one of her email addresses. School Committee counsel signed those interrogatories as to objections, served on all parties, and indeed reviewed the same. *See* Ex. D.

- Both defendants provided in their answers to interrogatories that to respond to the Plaintiff's production of documents: "My everettk12.ma.us email was searched by counsel for documents responsive to Plaintiffs' requests for the production of documents directed to the Everett School Committee. I also searched my personal texts and email address for documents responsive to Plaintiffs' requests for the production of documents directed to the Everett School Committee." *See* Exs. C, D.

- In privilege logs produced alongside many of their productions dated February 19, 2025, March 26, 2025, and April 22, 2025, School Committee counsel assert privilege over dozens of emails that came from City email accounts, often "michael.mangan@ci.everett.ma.us." *See* Exs. E-G.

On April 14, 2025, months ***after*** the requests mentioned above, interrogatory answers, and multiple privilege logs, the City produced the 40,000 documents in question, School Committee counsel then "requested assistance from [its in-house] litigation support team… to process the

4

files to a different format to facilitate [their] review," but does not identify when those documents became available. *See* Held Aff. ¶ 4. On May 8, 2025, Plaintiffs' counsel notified the City, copying Defendants' counsel, that its production included potentially privileged material. *See* Held Aff. ¶ 6. Counsel asserts that it was not until May 22 that they had notice that emails from @fmglaw.com were included within the City's production. It was not until this court denied the City's Motion for a Protective Order on May 28, weeks after the privileged document issue came to light, that School Committee counsel endeavored to examine production and found potentially privileged materials. *See* Held Aff. ¶¶ 11-15.

On May 29 and 30, School Committee counsel finally communicated with Plaintiffs' counsel, requesting that Plaintiffs take on the Defendants' burden of identifying and destroying privileged communications. *See* Held Aff. ¶¶ 17-22.

### III.   ARGUMENT

The same standard that governed the prior motion for a protective order over these same documents, which the Court denied, governs this new motion. Protective orders should not be granted where good cause does not exist to issue the requested protection. *See* Fed. R. Civ. P. 26(c)(1). This "'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959–60 (D.C. Cir. 1999)). The School Committee has the burden of establishing the need for such an order. *In re Keeper of Recs. (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003). Once again, the five *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 190 F.R.D. 287, 291 (D. Mass. 2000) factors control the inquiry: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time

5

it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice.

### A. The School Committee Defendants Have Waived Any Privilege under the *Amgen* Five-Factor Test.

The School Committee claims the first three Amgen factors are "not relevant because the School Committee was not the party that produced the privileged communications," and attempts to disclaim responsibility for the presence of materials over which they claim privilege in the City's production. However, these are not unrelated parties, all entities that are part of the corporate City of Everett, and the presence of hundreds, or more, of communications from the Schools Committee Defendants or counsel in the custody of the City should surprise no one. Particularly where School Committee counsel had a duty to inquire as to the locations of relevant documents at the outset of discovery, reviewed interrogatory responses which included City email address domains, and prepared and produced privilege logs that also included City email address domains, there can be no reasonable argument that counsel or their clients had no way of knowing, and they had no responsibility to take steps to prevent disclosure. Each of the five *Amgen* factors is applicable here and weighs in favor of a privilege waiver.

#### 1. Factor (1) (Reasonableness of Steps)

The Defendants make no showing that they exercised reasonable precautions to avoid the City's production of the documents at issue.

Their Motion and affidavit provide no details, explanation, or facts to demonstrate that they engaged in an adequate process, at the outset of discovery, to identify the issue or an explanation for how they reviewed interrogatory responses and prepared privileged logs without identifying and inquiring as to these email addresses. The responses from Ms. Cristiano and Mr.

Mangan list City email address, making clear that counsel knew that at least two School Committee Defendant stored potentially privileged documents on City email servers. *See* Exs. C, D. Neither the Motion nor the affidavit shows any effort on their part to communicate with the City to ensure review of potentially privileged communications in the custody of the City in its production. Had School Committee counsel diligently inquired, as they should have, both as part of discovery obligations and based on documents that they prepared, they easily could have coordinated with the City to run simple searches revealing the over 400 potentially privileged email communications. Doing so would have identified and resolved the issue far sooner in this litigation, and before the City produced the documents to the Plaintiffs.

In *Amgen*, the producing party had outsourced the copying of documents to a vendor, the court found that "a knowledgeable attorney or legal assistant should quickly have reviewed the performance of the vendor to ensure that the proper documents were copied. The ease with which this disclosure could have been prevented informs the Court's ruling that Choate's precautions were not reasonable." *Amgen*, 190 F.R.D. at 292. In *Omni Healthcare,* the Court also observed that "[r]elying on a party to conduct its own review without counsel's involvement, at least in part, is hardly a reasonable precaution." *Omni Healthcare, Inc.* 736 F. Supp. 3d at 83 (citations omitted)*.* This case is little different from *Amgen* or *Omni Healthcare.* The School Committee failed to take reasonable steps, based on information that should have been or was available to it, and, instead, assumed that the City would review documents in its custody for School Committee attorney-client privilege material. That was not reasonable.

### 2.    Factor (2) (Time to Recognize Error)

Courts have found support for waiver for a wide range of delays for post-disclosure activity, from just 5 days to more than 2 years. *See Amgen,* 190 F.R.D. at 292*;* and *Omni Health*

*Care, Inc.,* 736 F. Supp. 3d at 85. The City produced the documents on April 14, 2025. At that point, the School Committee Defendants had full access to the production and could have taken steps to review it. Instead, they chose not to review the production. Nearly a month later, on May 8, 2025, Plaintiffs informed the City's counsel of the production of potentially privileged materials, including emails between "*various outside counsel*… about this case and our clients generally." *See* Docket No. 65-2. (emphasis added).[3] Once again, the School Committee counsel chose not to run even a rudimentary search of those documents' metadata to see whether their privileged materials were included, and decided it would "cease review of the City's document production pending a decision from this court." *See* Held Aff. ¶¶ 6-9. Even then, on May 22, when School Committee counsel admits that it had actual notice of the emails' inclusion in the production, they still sat on their hands, hoping instead that "the court could potentially grant the City's Motion for Protective Order." *See* Held Aff. ¶¶ 11-12.

At the threshold, Plaintiffs assert that School Committee counsel had actual notice of the issue long before May 22, given their involvement with interrogatory answers and privilege logs with these same email addresses months before. But even if that were not the case, it still took counsel from April 14, when it first had access to the production, until May 28, a period of 45 days, before it took any actions to determine whether privileged materials had been produced. *See* Held Aff. ¶¶ 13-16; Def. Mot., p. 8. Simply because counsel waited to look does not mean they should not be charged with failing to recognize the error months ago.

---

[3] Because Plaintiffs' counsel abstained from any review of these documents and instructed their own vendor to segregate them, this was the extent of information available to counsel to disclose.

8

3.  **Factors (3) (Scope of Production)**

When a "disclosure was… substantial "as compared to the size of [the] production,"… it was not "a reasonable mistake" and weighs in favor of waiver. *Kaiser v.* WL 182375 at *9 (citations omitted). In *Amgen,* approximately 200 of 70,000 documents (0.28%) were privileged, which the court described as "a substantial release" and noted that "the scope of the disclosure… is dramatic." *Amgen,* 190 F.R.D. at 293. In *Omni Healthcare,* a release of 613 out of 91,202 documents (0.67%) was given neutral weight as a factor; nevertheless, the court found that a waiver had occurred. *Omni Healthcare, Inc.* 736 F. Supp. 3d at 83.

Here, the scope of the School Committee's potentially privileged production is unclear because the Defendants have not attempted to establish with any specificity that privilege applies to the emails over which it is claiming privilege in the City's custody. Counsel's supporting affidavit states that there are as many as 412 potentially privileged communications disclosed, out of their total of 40,937 total documents, or 1.01%. *See* Held Aff. ¶¶ 5, 23. The scope of this potential disclosure weighs in favor of waiver.

4.  **Factor (4) (Extent of Disclosure)**

The extent of the disclosure concerns "both the number of documents produced and the number of individuals who have already seen the documents," as well as the "length of time for which they possessed those documents." *Kaiser*, 2022 WL 182375, at *9; *Amgen*, 190 F.R.D. at 293. Multiple-year-long periods of disclosure, where multiple parties had viewed the materials, have been found to weigh heavily in favor of waiver. *See e.g. Omni Health Care,* 736 F.Supp.3d at 86 (three-year period of disclosure and at least a partial review by multiple parties); *Kaiser*, 2022 WL 182375 at *9 (two-year period of disclosure and viewed by other counsel and presumably forwarded to their clients). However, in *Amgen*, the Court found the extent of

disclosure to weigh in favor of waiver, even where a receiving party had "suspended review of the documents until this Court issues an order" where it was clear that other personnel were involved in reviewing the disclosed documents. *Amgen*, 190 F.R.D. at 293.

Here, counsel for the Defendants, the Plaintiffs, support staff, vendors, and perhaps all clients have had access to this potentially privileged material for more nearly two months, since the City Defendants produced it on April 14, 2025. The City has had custody of this potentially privileged material, some undetermined longer period, as it is the best guess of counsel, that the reason this material is in the City's custody is that they exchanged potentially privileged emails with users who had City domain email addresses. *See* Held Aff., ¶ 16. Due to the large number of recipients who may have had access to the potentially privileged materials, the number of materials in question (potentially more than 1% of the production), and the length of time that various parties have had such access, the extent of disclosure here weighs in favor of waiver.

### 5. Factor (5) (Fairness and Justice)

Factor (5) weighs heavily in favor of the Plaintiffs. This factor is laid out succinctly in *Amgen*: "The overriding interests of fairness and justice also dictate the recognition of a waiver of the privileges. While the Court is sensitive to the fact that [a party] may be disadvantaged by the carelessness of its attorneys, it would be *unjust to reward such gross negligence by providing relief from waiver*. In fact, if the Court does not hold that a waiver has occurred under the egregious circumstances here presented, it might as well adopt the "never waived" rule and preclude such a holding in all cases." *Amgen*, 190 F.R.D. at 293 (emphasis added).

Here, fairness and justice weigh heavily in favor of waiver. Defendants' counsel has not asserted that they attempted to coordinate to prevent any of their potentially privileged materials in the city's custody from being disclosed. Once the Defendants had access to the City's

10

production, they delayed their review for 45 days, waiting until after this Court had ruled on a motion, to try to protect these documents. *See* Held Aff. ¶¶ 3, 17. The Defendants failed to assert their rights promptly, the first time this disclosure was before this court, taking a chance that it would benefit from a favorable ruling. *See* Held Aff. ¶ 12. That play failed, and now the Defendants ask this Court to rule once again on the same production. The Court should not provide the Defendants with another bite at the apple, having forced the Plaintiffs to incur further expense to oppose this motion. It should hold them accountable for failing to take any steps to protect these documents in the first place.

B.    **The School Committee Defendants did not Act Promptly to Protect Their Potentially Privileged Communications.**

The Defendants further argue that they "took prompt action after its attorneys discovered that its privileged communications were produced by the City." Def. Mot., p. 8. The Defendants assert that it has "met its 'obligation to make reasonable efforts to remedy the breach of confidentiality caused by the [City's] production and preclude their known adversary from making use of the information.'" *See* Def. Mot., p. 9, *quoting Hache v. AIG Claims, Inc.*, 607 F. Supp. 3d 100, 118 (D. Mass. 2022). In support, the School Committee Defendants offer that they acted in a matter of days beginning on Wednesday, May 28, and ending with the filing of their motion on June 2, 2025, to protect their privilege. *See* Def. Mot., p. 8. In *Hache,* the Court noted "it was not [the] production … that waived the jointly-held attorney-client and work product protections, but <u>the defendants' own failure to act</u> in response to the production… By failing to do so, they implicitly waived their right." *Hache,* 607 F. Supp. 3d at 118 (emphasis added).

As described above, the School Committee had several opportunities to act to protect its privilege. Nevertheless, counsel rolled the dice and waited until this Court denied the Motion for a Protective Order, before attempting to "search within the City's document production and

determine the extent of the communications that were produced by the City." Held Aff. ¶ 14. Given the close relationship between the parties, the access it had to the City's production, the serial notice that the production contained potentially privileged materials, the Defendants' counsel's failure to act to protect its privilege, instead merely waiting passively and hoping for a favorable ruling from this Court was not prompt or reasonable under the circumstances and has waived any claims of privilege that the Defendants may have had over these materials.

C. **The School Committee Defendants Have Not Met Their Burden of Establishing Privilege and Their Draft Order Would Likely Destroy Non-Privileged Materials**

The School Committee Defendants have not met their burden of establishing that the attorney-client privilege or work product doctrine apply to any of the documents that were in the City's custody or its production, or that such privilege has not been waived. Further, the School Committee Defendants' draft order would almost certainly destroy nonprivileged communications. The attorney-client privilege is narrowly construed. *Hache,* 607 F. Supp. 3d at 110. The party claiming privilege "bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived." *Amgen*, 190 F.R.D. at 289.

All the Defendants have done here, is offer that "it remains unclear how many of the School Committee's privileged correspondences became included in the City's document production" and also "[w]ithin the City's document production, there are 176 privileged email communications between FMG attorneys and members of the School Committee and/or employees of EPS, generated from the search term '@fmglaw.com'." Held Aff. ¶¶ 15, 23. They do not attempt to identify or describe these emails. The School Committee Defendants also note, but without asserting that such documents are privileged that "[t]he City's document production also includes approximately 236 email communications between administrative counsel to the

School Committee, Attorney Bob Galvin, and members of the School Committee, using the search terms 'rwgalvin@comcast.net '@galvin-legal.com'." Held Aff. ¶ 23.

Rather than attempting to establish that certain documents are privileged, and that privilege has not been waived, the School Committee Defendants have instead asked this Court to order Plaintiffs to "destroy all written communications in their possession between the School Committee and its attorneys," impliedly asserting privilege over a broad swath of communications, without regard to whether such communications were made to obtain legal advice, or whether recipients have an attorney-client relationship with FMG or Attorney Bob Galvin. *See* Docket No. 65, p. 11. Such an order is overbroad, would destroy relevant documents, and supports that the School Committee Defendants have not met their burden of establishing that the attorney-client privilege or work product doctrine applies to any of the documents.

To underscore this point, the only explanation offered by the School Committee Defendants for why its communications with its clients are in the City's custody is that Michael Mangan "was employed by the City of Everett during the relevant period and communicated using a "@everett.ci.ma.us" email address." *See* Held Aff. ¶16. Mr. Mangan could have communicated with his attorneys using a school committee-provided email address or his personal email address. Instead, he chose to conduct School Committee business using an unrelated work email address. The use of a company's email system for attorney-client communications may waive privilege if the employee did not have a reasonable expectation of privacy in their email communications, based in part on employer polices. *Weinreich v. Brooks*, 2022 WL 2373797, at *3 (D. Mass. Feb. 3, 2022). Without knowing *which* email communications Defendants claim privilege over, such analysis is premature, but to the extent

that any privileged communications were made with a City email domain, they are not entitled to a presumption of privilege.

**D.  The Court Should Order Payment of the Expenses and Attorneys' Fees Incurred in Responding to the Defendants' Motion**

The Court may order the payment of a party's reasonable expenses and attorney's fees incurred in successfully opposing a motion for a protective order. Fed. R. Civ. P. 37(a)(5)(B). The Court must not order fees and costs "if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id.* Substantially justified is one that could satisfy a reasonable person. *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., 295 F.3d 108, 117 (1st Cir. 2002)*

Here, by Defendants' admission, the Plaintiffs are forced to oppose a Motion for a Protective Order regarding the same batch of production for the second time because Defendants' counsel chose to wait until after its co-defendants received an unfavorable ruling before taking any action. Plaintiffs should not have to bear the cost of responding to a second motion for a protective order for same set of production due to the Defendant's willful inaction, and the Court should award expenses and fees.

## IV. CONCLUSION

For all the reasons set forth above, the Court should deny the motion for entry of a protective order by the City and Mayor DeMaria, deem that the attorney-client privilege and work product doctrine have been waived for the documents produced by the Defendants on April 14, 2025, and order reasonable expenses and attorney's fees incurred in opposing this motion.

                                                Respectfully submitted,
                                                The Plaintiffs,
                                                Priya Tahiliani and Kim Tsai,
                                                By their counsel,

                                                */s/ Andrew N. Bettinelli*
                                                _____
                                                Christopher L. Brown (BBO# 663176)
                                                Ivria Glass Fried (BBO# 688177)
                                                Andrew N. Bettinelli (BBO# 703220)
                                                Harrington Heep LLP
                                                40 Grove Street, Suite 190
                                                Wellesley, MA 02482
                                                (617) 489-1600
                                                cbrown@harringtonheep.com
                                                ifried@harringtonheep.com
                                                abettinelli@harringtonheep.com

Dated: June 11, 2025

**Certificate of Service**

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as nonregistered participants on April 10, 2025.

Dated: June 11, 2025                        */s/ Andrew N. Bettinelli*
                                               Andrew N. Bettinelli (BBO# 703220)
                                               Harrington Heep LLP
                                               40 Grove Street, Suite 190
                                               Wellesley, MA 02482
                                               (617) 489-1600
                                               abettinelli@harringtonheep.com